James **MURRAY**, Plaintiff,

v.

**SEARS, ROEBUCK AND CO.,**
**Defendant.**

**Civ. A. No. 4:89CV0167.**

United States District Court,
N.D. Ohio, E.D.

Sept. 28, 1989.

Michael Morley, Michael Morley Co., LPA, Youngstown, Ohio, for plaintiff.

Keith A. Savidge, Seeley, Savidge & Aussem Co., LPA, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

James Murray commenced this action on January 27, 1989 against Sears, Roebuck & Company ("Sears"). He claims that, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* ("the ADEA"), Sears transferred him from a well-paid management position to a commission-based sales position in which he earned much less. He contends that this transfer forced him into early retirement, and thus he includes a constructive discharge claim. Sears responds that Murray was transferred for legitimate business reasons unrelated to his age, and that he resigned voluntarily. The Court has jurisdiction under 28 U.S.C. § 1331.

Now pending is Sears' July 14, 1989 motion for summary judgment, which Murray opposes. Upon consideration and for the reasons that follow, the Court finds Sears' motion to be well-taken.

### I.

The relevant facts are not in dispute. James Murray, now sixty-four years old, began his employment with Sears as a commission-based salesperson in October of 1949. In 1951, he ceased active sales duties and became a division manager. He served in this capacity for more than thirty years.

In February of 1984, as part of a company-wide restructuring process, the store manager, John Hawkins, selected Murray for a newly created position, the Lead Development Coordinator ("LDC") of Home Improvement Products and Sales ("HIPS").

As both sides describe it, the LDC was conceived as a function requiring management experience. Murray worked in that capacity until February of 1987, at which time he was earning $17.73 per hour, when Hawkins again selected him for transfer, this time to a position selling major appliances on a commission basis.

The parties disagree as to the reason for this transfer. Hawkins asserts that the LDC job had evolved into one that was essentially clerical, such that Murray was both overqualified and overpaid for it. Hawkins states that, especially in light of Murray's salary level, he believed Murray's talents could be better utilized in another position. Murray, on the other hand, contends that the transfer was due to his age. However, he acknowledges that, incident to the transfer, Hawkins explained that, despite Murray's high quality performance as LDC, his wage level was too high. Murray brief at 9.

Murray, then sixty-one years old, had not worked as a salesperson for thirty years, and had no previous experience selling such appliances. Sears set him a sales goal of $500,000 and set his hourly pay rate at $5.99. These figures were calculated to permit him to earn at least as much in salary plus commissions as he had earned as a manager, $36,452.00, if he met his sales goal. He was replaced as LDC by a fifty-one year old, who was paid $7.17 per hour.

Murray served in his new capacity until November of 1987, earning a total of $31,502.00, slightly less than he had earned as a salaried manager. He draws the Court's attention to conversations between his supervisor, Nick Balog, and Hawkins concerning his comparative lack of success selling appliances. He also alleges, and Sears does not dispute, that Balog asked him on various occasions about his plans and whether he planned to retire.

On November 14, 1987, he took a leave of absence to undergo surgery for a recurring foot problem. He did not return to work thereafter. On January 31, 1988, at sixty-two years of age, he retired and accepted a lump sum distribution from the pension plan of $47,538.60; a distribution from the profit sharing plan of $21,564.98; 2,942 shares of Sears stock; and vacation pay and other benefits.

Murray subsequently filed a complaint of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On September 28, 1988, the EEOC issued a determination adverse to Murray's claim. Murray having sought review of this ruling, the EEOC issued its determination on review and dismissal of ADEA charge, confirming the initial adverse determination, on December 21, 1988. Murray then timely filed the instant lawsuit, claiming age discrimination and constructive discharge, and demanding compensatory and liquidated damages, as well as legal fees and costs.

## II.

Sears now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

The nature of the materials properly presented in a summary judgment pleading is set forth in Rule 56(e):

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Moreover, the moving party need not submit evidence negating a claim on which its opponent bears the burden of proof; and the moving party may rely upon the adverse party's failure to substantiate such essential claim with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing a summary judgment motion, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Id.* Thus, in most civil trials, the Court must decide "whether [a] reasonable [finder of fact] could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. Although "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat a summary judgment motion, the Court is not precluded from denying a summary judgment motion where it concludes that proceeding to trial is a better course. *Id.* at 252, 254, 106 S.Ct. at 2512, 2513.

### III.

Murray advances his claim pursuant to the Age Discrimination in Employment Act of 1967, codified at 29 U.S.C. § 621, *et seq.* ("the ADEA"), which states:

It shall be an unlawful employment practice for an employer—

(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ...

29 U.S.C. § 623(a). By its terms, this statute applies to individuals between the ages of 40 and 70. 29 U.S.C. § 631(a).

The Sixth Circuit Court of Appeals has held that "[t]he ultimate issue in [an] age discrimination suit is whether age was a determining factor in the employer's decision...." *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1180 (6th Cir.1983), cited in *Brownlow v. Edgecomb Metals Co.*, 867 F.2d 960 (6th Cir.1989). The Sixth Circuit has upheld usage of the criteria first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when assessing whether an employer's actions have been the impermissible product of intentional discrimination. *Simpson v. Midland–Ross Corp.*, 823 F.2d 937 (6th Cir.1987); *Blackwell v. Sun Electric Corp.*, 696 F.2d at 1176; *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir.1982).

Accordingly, to establish a *prima facie* case of discrimination under this statute, Murray must produce evidence showing that:

(1) he was a member of a protected class (age 40 to 70);

(2) he was subjected to adverse employment action;

(3) he was qualified for the position;

(4) he was replaced by a younger person.

*Simpson v. Midland–Ross Corp.*, 823 F.2d at 940. *See also Wilkins v. Eaton Corp.*, 790 F.2d 515, 520 (6th Cir.1986). As in *McDonnell Douglas*, such a *prima facie* showing creates a rebuttable presumption which shifts the burden to the employer to articulate legitimate business reasons for its actions. If the employer produces such reasons, the burden shifts back to the plaintiff, who must:

demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination.

*Simpson v. Midland–Ross Corp.*, 823 F.2d at 940, citing *Texas Dep't of Community*

*Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

The Sixth Circuit has held explicitly, however, that this burden-shifting analysis must not be employed rigidly in ADEA cases, so as to defeat a court's ability to "remain attentive to the realities of the business world." *Simpson,* 823 F.2d at 941, *citing Laugesen v. Anaconda Co.,* 510 F.2d 307, 312 (6th Cir.1975). One such "reality," that the restructuring of a business may cause the elimination or redefinition of employment positions, has been noted repeatedly. For example, in *LaGrant v. Gulf & Western Mfg. Co., Inc.,* 748 F.2d 1087 (6th Cir.1984), the Court of Appeals held that:

> The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient.... The plaintiff in such reorganization cases must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination ...

*Id.* at 1090–91. Further, in *Ridenour v. Lawson Co.,* 791 F.2d 52 (6th Cir.1986), the Court of Appeals stated:

> [A]n ADEA plaintiff who has been terminated amidst a corporate reorganization carries a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons.

*Id.* at 57. *But see McMahon v. Libbey–Owens–Ford Co.,* 870 F.2d 1073, 1077 (6th Cir.1989) (employer's claim of economic necessity rebutted by financial and statistical evidence, and evidence that jobs were not eliminated as claimed).

The Court of Appeals has also cautioned that an employee's subjective perception that he has suffered discrimination, in the absence of objective evidence substantiating such perception, does not constitute probative evidence. *Wrenn v. Gould,* 808 F.2d 493 (6th Cir.1987); *Coffy v. Multi–County Narcotics Bureau,* 600 F.2d 570 (6th Cir.1979).

## IV.

Murray contends that he has made out a *prima facie* case because he falls within

the protected age range and was "demoted" from LDC to sales. Sears does not question that he was performing well as the LDC; nor does Sears dispute the fact that the person who succeeded Murray as LDC was younger, although also within the protected age class.

In its motion for summary judgment, Sears does not concede that Murray states a *prima facie* case. It questions whether Murray satisfies the fourth prong of the *McDonnell Douglas* analysis, because, although she was younger than he, Murray's successor also qualified for protection under the ADEA. In addition, it asserts that the LDC position had become essentially clerical in nature such that, because he had many years of experience and was paid at a commensurate level, Murray was no longer properly qualified.

■ Regarding the first of these objections, the Court declines to follow Sears' suggestion that it adopt the reasoning of the Fifth and the Eleventh Circuit Courts of Appeal and include within the *prima facie* case a requirement that the ADEA plaintiff must have been replaced by an employee who is younger than 40. *See Allison v. Western Union Telephone Co.,* 680 F.2d 1318, 1321 (11th Cir.1982); *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981). Instead of strict rules of this sort, the courts within the Sixth Circuit use a modified *McDonnell Douglas* analysis which permits a case-by-case assessment of employers' motives. *Blackwell,* 696 F.2d at 1180–81; *Ackerman,* 670 F.2d at 69. *See, e.g., Wanger v. G.A. Gray Co.,* 872 F.2d 142, 145 (6th Cir. 1989) (plaintiff must show "that the position went to a younger individual outside the protected class *or that other reasonable evidence exists for inferring that he was denied a position because of his age"*) (emphasis added). Thus, even if the Court were persuaded that this case presents compelling reasons for creating such a requirement, which it is not, it would be precluded from doing so. Murray does not fail to state a *prima facie* case

based on the fact that he was replaced by a fifty-one year old.

■ Further, under the usual analysis, a *prima facie* case requires that the plaintiff be adequately qualified for the position in question. Sears does not dispute that Murray was so qualified with respect to the LDC position. Its assertion that he was overqualified, and the parties' dispute concerning whether or not the job was essentially clerical, involves questions of asserted business justifications and pretext. This dispute does not defeat Murray's *prima facie* case and the burden of production does shift to Sears.

■ Moving for summary judgment, Sears asserts that age played no part in Murray's transfer from management to sales. It contends that Hawkins acted upon legitimate business concerns—to define his staff positions appropriately, to pay his employees at a rate commensurate with the demands of their jobs, and to fill important openings with experienced and successful employees. As discussed in *Simpson*, 823 F.2d at 941, in *LaGrant*, 748 F.2d at 1090–91, and in *Ridenour*, 791 F.2d at 57, the mandate of the ADEA does not void employers' authority to address business "realities." Hawkins' desire to save $10 per hour in salary for the LDC position is clearly a sound business reason to reassign personnel.

Therefore, the burden returns to Murray to show that these reasons are pretextual, and to produce probative evidence that his transfer was actually the result of intentional discrimination. *Simpson*, 823 F.2d at 940. Attempting to carry this burden, Murray notes that he was the oldest employee, that his successor was younger and was paid less than he had been, and that his supervisor questioned him about when he intended to retire. He states that, although none of his superiors ever articulated such a concern, he nonetheless "felt" that the transfer was prompted by his age. Murray deposition at 97.

None of these arguments succeed. As the Court of Appeals explained in *Laugesen*, 510 F.2d at 307, the natural aging process in any work force prevents courts from drawing more than a limited inference of discrimination from an employee's position as the oldest member of a department or an employer's practice of paying a younger, but less experienced, worker a lower wage.

Further, although Murray makes much of Balog's alleged inquiries regarding his retirement plans, the Court finds nothing *per se* discriminatory in such inquiries. In order to plan for the future of a department, a manager must be able to ask the employees whether any of them plan to move out of the area, or to return to school, or to leave their positions for any other reason. Given the clear instruction in the Sixth Circuit case law that the ADEA was not designed to trample employers' legitimate business practices, and in the absence of any allegation of a hostile tone or of any suggestion that Murray's departure would have been welcomed, the Court cannot conclude that Balog's inquiries were illegitimate. Further, Murray has not alleged that Hawkins made any similar comments, before or after making the decision to transfer him, or that a connection existed between Balog's comments and the transfer decision (that Hawkins had already made and effectuated).

Finally, it is clear under the law of this circuit that Murray's subjective belief that he was discriminated against does not constitute probative evidence of such discrimination. *Wrenn*, 808 F.2d at 493. In order to contest the validity of Hawkins' motives, and to create a material dispute, he must produce objective evidence to substantiate this belief. This Murray fails to do.

It appears that Murray fundamentally misperceives the protection afforded by the ADEA, for he explains at length that the LDC position was not clerical and that he had been appropriately placed and retained in that function from 1984 to 1987. Based on Sears' job descriptions, he suggests that the Court view as pretext Hawkins' description of the duties as clerical. The ADEA does not command that employers write accurate job descriptions. It does not require that they make fair or accurate assessments of their employees' abilities,

or that they assign their employees to appropriate positions.

The factfinder may not focus on the soundness of the employer's business judgment, ... since the ADEA was only intended "to protect the older worker from arbitrary classifications on the basis of age...." The ADEA did not change the fact that an " 'employer may make a subjective judgment to discharge an employee *for any reason that is not discriminatory.*' "

*Wilkins*, 790 F.2d at 521 (citing, *inter alia*, *Blackwell*, 696 F.2d at 1179, and *Ackerman*, 670 F.2d at 70). Whether or not the LDC position had evolved into a clerical job is therefore irrelevant. Sears was wholly within its rights to misunderstand jobs, to rewrite job descriptions, or foolishly to transfer its employees from appropriate positions into inappropriate ones. Evidence that Sears may have made poor decisions, so long as it is unconnected to the ages of its employees, creates no liability under the ADEA.

Sears asserts that, the *material* facts being undisputed, Murray cannot carry his burden of showing that Hawkins' proffered reasons for transferring him were but pretexts for age-based animus. The Court agrees. Sears' motion for summary judgment must be granted with respect to Murray's age discrimination claim.

### V.

Murray also claims that the conditions he encountered as a salesperson effectively forced him to resign. The constructive discharge doctrine permits a plaintiff to prove discrimination, despite the fact that the plaintiff was not discharged by the employer, but rather terminated the employment relationship himself due to the extremely adverse conditions. In the Sixth Circuit, these claims are governed by the standard set forth in *Jacobs v. Martin Sweets Co., Inc.*, 550 F.2d 364 (6th Cir.1977), which requires a finding that the conditions were so intolerable that a reasonable person would have seen no choice but to resign. *Williams v. Caterpillar Tractor Co.*, 770 F.2d 47, 49 (6th Cir.1985). A constructive

discharge claim requires that the plaintiff thus go beyond proving discrimination actionable under the relevant civil rights statute, and demonstrate that the attendant circumstances were so severe that that statute's discharge requirement has been amply satisfied. *Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir.1984).

Murray charges that the sales position was untenable because it was demeaning for him to work for commissions after thirty years in management; because he made less money, having had no experience in the major appliance area; and because he was forced to work on his feet despite a history of foot problems.

Sears agrees that Murray's resignation was prompted by his disappointing sales figures and his foot problems. It asserts, however, that neither of these factors was characteristic of the working conditions and neither shows age-bias on the part of Sears. It points out that Murray did not, based on the objective, self-evident features of the job, protest the transfer in early 1987. Rather, he worked for most of that year, earning virtually the same total compensation as he had in the LDC position, and then voluntarily took a leave of absence.

Unlike the plaintiffs in the cases appropriately cited by Sears, Murray has not claimed that he was subjected to harsher conditions than his co-workers, or to harassment. Rather, without citing any supporting case law, Murray claims the issue is whether his decision to resign was reasonable due to his *subjective* circumstances, to wit: his failing health; his disappointment with the position; and his subjective belief that his supervisor was urging him to retire.

Again, Murray fundamentally misperceives the relevant doctrine. To establish that he was constructively discharged, he would have had to allege *objectively* burdensome conditions. His own subjective inability to perform the job certainly does not support a constructive discharge claim. Moreover, by drawing attention to his failing qualifications, he effectively nullifies his discrimination claim. Likewise, failed

expectations do not evidence objectively burdensome conditions. Finally, as discussed above, Murray's personal belief that Balog thought he should retire cannot alone support a discrimination claim. To survive Sears' motion for summary judgment on his constructive discharge claim, Murray would have to produce evidence that the conditions imposed upon him by Sears, viewed objectively, were so burdensome that a reasonable person would have found them intolerable. Murray has produced no such evidence. Accordingly, Sears' motion must be granted on this claim as well.

## VI.

Because under *Celotex v. Catrett*, 477 U.S. at 317, 106 S.Ct. at 2548, a party moving for summary judgment need not negate a claim on which its opponent bears the burden of proof, Sears must prevail if Murray fails to produce evidence from which a reasonable fact finder could conclude that he has proved his case. Upon consideration of the evidence produced by both sides, the Court finds that Murray has utterly failed to show that, instead of the proffered concerns about finances and personnel, his age motivated Sears' decision to transfer him from management into sales. Similarly, he has produced no evidence from which a jury, applying Sixth Circuit precedent, could conclude that Sears constructively discharged him. Accordingly, Sears' motion must be granted as to both claims, and summary judgment entered in its favor.

IT IS SO ORDERED.