**David L. DEVLIN, Plaintiff,**

v.

**WSI CORPORATION, The Analytic Science Corporation, Janis Farnham, Barry Tudor and James Bardis, Defendants.**

Civ. A. No. 91–13011–Y.

United States District Court,
D. Massachusetts.

Sept. 28, 1993.

James E. Grumbach, Serino, Vernaglia, Ley & Young, Boston, MA, for plaintiff.

Kenneth M. Bello, Karen K. Burns, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Discrimination based on age burdens commerce, and arbitrary age limits on employment, regardless of ability to perform work, unjustly hinder older individuals who desire to work. "In the face of rising productivity

and affluence, older workers often find themselves disadvantaged in their efforts to retain employment and especially to regain employment when displaced from jobs." [1] Consequently, Congress enacted the Age Discrimination in Employment Act (ADEA)—codified at 29 U.S.C. §§ 621-34—to protect workers between the ages of forty and seventy from losing their jobs due to the intolerable practices and misconceptions of some employers.

When David Devlin ("Devlin"), age 50, was terminated from his job, he found himself in a situation that he believes the ADEA explicitly prohibits. Specifically, Devlin alleges that his termination by WSI Corporation ("WSI"), coming just months after the installment of new managers, was based on his age. Devlin further contends that his termination, if not due solely to his age, was made in bad faith to prevent Devlin from receiving already earned benefits or in retaliation for his filing a claim for workers' compensation benefits. Devlin also claims that The Analytic Science Corporation ("Analytic") and the individual defendants intentionally interfered with his employment contract with WSI. Accordingly, Devlin's three count Complaint alleges violation of the ADEA (Count I), wrongful discharge (Count II), and intentional interference with advantageous contractual relations (Count III).[2]

Convinced that age was the primary motivator in WSI's decision to terminate him, Devlin filed a complaint with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission in May 1991. On November 20, 1991, Devlin, a resident of Georgia, filed the instant action. In response to the Complaint, the Corporate defendants and the individual defendants Barry Tudor ("Tudor"), James Bardis ("Bardis"), and Janis Farnham ("Farnham") moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief may be granted. On April 21, 1992, after oral argument, this Court dismissed the ADEA claims (Count I) against Tudor, Bardis, and Farnham and deferred ruling on Devlin's allegations of age discrimination against WSI and Analytic. The parties agreed to convert the motion to dismiss Count One to a motion for summary judgment. Further briefing was ordered on the issue of whether Ron Irving ("Irving"), Devlin's immediate successor, was Devlin's permanent replacement. Since there is complete diversity between the parties, the Court also ordered further briefing on the motion to dismiss the state law claims. The matter was then taken under advisement.[3]

## FACTS [4]

Analytic, a corporation with its principal place of business in Reading, Massachusetts, is the parent corporation of WSI. In 1982, at the age 43, Devlin commenced work for WSI as a salesperson. By 1988, Devlin's sales territory covered what was known within WSI as the Southeast Region. It included eleven states and Puerto Rico. In December 1988, Farnham became Devlin's sales manager. At that time Bardis, the Director of Commercial Systems Groups at Analytic, was responsible for overseeing the sales division of WSI. Farnham reported directly to Bardis, who in turn reported to Tudor, the president of Analytic. Farnham, Bardis, and Tudor were all employees of Analytic.

During a sales convention in September 1989, Farnham referred to Devlin and another employee who was also over forty as the "old men's club." Also in the fall of 1989, WSI implemented a retroactive sales policy

---

1. 29 U.S.C. § 621(a)(1).

2. Devlin's complaint also contained a claim for intentional infliction of emotional distress which this Court dismissed, *sua sponte*, for failure to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6).

3. The Court stayed all discovery pending the outcome of this motion. On February 1, 1993, this Court, after careful deliberation and pursuant to Fed.R.Civ.P. 56(f), lifted the stay of discovery to allow taking the depositions of Bardis and Irving since, in response to the Court's order for further briefing, WSI and Analytic had offered affidavits which were replete with hearsay and not dispositive of the motion.

4. These facts, all drawn from the record—including the depositions of Cardis and Irving, are presented in the light most favorable to Devlin. *Continental Grain Co. v. Puerto Rico Maritime Shipping Authority*, 972 F.2d 426, 431 (1st Cir. 1992) (motion for summary judgment).

that pre-empted some already earned sales commissions. Devlin opposed the new plan and voiced his concerns to Farnham. Under an alleged threat of termination, Devlin reluctantly accepted the new policy.

In October 1989, Devlin's doctor, believing Devlin to be suffering from high blood pressure and work-related stress, advised him to take two weeks off from work. Devlin returned to work on November 13, 1989 and filed a claim for workers' compensation on November 17, 1989. WSI contested the workers' compensation claim and on November 21, 1989, WSI terminated Devlin's employment. Devlin was 50 years old.

Late in 1989, Analytic purchased Electronic Satellite Data Systems ("Electronic"), a company which produced, marketed and sold satellite imagery and weather display and processing equipment. Analytic eventually closed Electronic and transferred some of its employees to WSI. Bardis, responsible for filling the vacancy created by Devlin's termination, looked to Electronic for a transfer employee. Irving, the Electronic sales representative for all of the United States and Canada, expressed an interest in the WSI southeast sales position. Bardis was familiar with Irving. The two had met at trade shows and Irving had previously interviewed with Bardis for Farnham's job.

In January 1990, Irving discussed the sales position with Farnham and began shouldering some of the job's responsibilities. Irving was never formally interviewed or offered the position. Nevertheless, by March 1990, Irving, Farnham, and Bardis had "come to an understanding" that Irving would be WSI's new southeast sales representative. The parties executed a sales compensation agreement and, with Tudor's approval, Irving officially became WSI's southeast sales agent. At that time, Irving was 42 years old.

After Devlin left, but before Irving assumed the sales post, WSI reorganized its sales territories and created a new territory which incorporated some of Devlin's former sales areas. The remaining states stayed within the southeast territory. Although under the impression that WSI policy required sales agents to live in the territory they serviced, Irving worked out of his home in Maryland, a state not within his territory. Disturbed that his home was not suitable to accommodate both his work and his young family and troubled by his perception that WSI policy mandated that he live in his sales territory, Irving requested WSI to move him to Georgia. Tudor adamantly refused this request.

In August 1990, during a lengthy discussion with Tudor, Irving aired his dissatisfaction with his living and working arrangements. To alleviate the problem, Irving requested WSI to move him to Georgia. Irving thought this a reasonable request, in view of the fact that WSI and Analytic had recently moved their other employees to Massachusetts, WSI's new headquarters. Tudor, however, was unyielding and suggested that if Irving was unhappy at WSI then he should resign. On that same day, prompted by Tudor's suggestion, Irving resigned. At the time of his resignation, Irving had been the southeast sales representative for only six months. Irving's successor at WSI was in his mid-twenties and lived in Georgia.

## DISCUSSION

### I. The Motion for Summary Judgment—Count I

■ Summary judgment shall be granted only when the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c); *Celotex v. Cartrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment bears the burden of demonstrating its legal entitlement to summary judgment. *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510, 1516 (1st Cir.1991). This Court must view the record in the light most favorable to the non-moving party. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Continental Grain Co. v. Puerto Rico Maritime Shipping Authority*, 972 F.2d 426 (1st Cir.1992). Nonetheless, the non-movant cannot rest content with unsupported allegations; rather, it must set forth specific facts, in suitable evidentiary

form, in order to establish the existence of a genuine issue for trial. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). It is against this backdrop that the Court examines the motion for summary judgment.

Title 29, U.S.C section 623 states in part: It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . .

■■■ A suit brought pursuant to 29 U.S.C. §§ 621 et seq., requires the plaintiff to establish a prima facie case of age discrimination.[5] This requirement is true for all ADEA plaintiffs unless there is direct evidence of age discrimination. The elements of a prima face case arise from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in which the Supreme Court enunciated a standard test for all discrimination cases. The *McDonnell Douglas* test has a shifting burden and, as adapted to an age discrimination case, requires:

(1) that the plaintiff be over 40 years of age;

(2) that the plaintiff be demoted or discharged;

(3) that a younger person or person under 40 years of age replace the plaintiff;

(4) that the plaintiff be qualified to do the job.

*Menard v. First Sec. Services Corp.,* 848 F.2d 281 (1st Cir.1988); *Dea v. Look,* 810 F.2d 12 (1st Cir.1987) citing *Loeb v. Textron,* 600 F.2d 1003 (1st Cir.1979); *Connell v. Bank of Boston,* 924 F.2d 1169, 1172 (1st Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991); *Schuler v. Polaroid,* 848 F.2d 276 (1st Cir.1988).

■■■ Once the plaintiff satisfies the burden of establishing a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason for its action.

*Menard,* 848 F.2d at 285. *See also Texas Dep't Of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant asserts that the plaintiff's termination was for non-discriminatory reasons, the plaintiff bears the burden of proving that age was the determinative factor for discharge, i.e., that but for his age the plaintiff would not have been terminated. *Hazen Paper Co. v. Biggins,* —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338; *Loeb v. Textron,* 600 F.2d 1003, 1011 (1st Cir.1979). Under Massachusetts law a parent corporation and its subsidiary are separate corporate entities. *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 618–19, 233 N.E.2d 748 (1968) (Cutter, J.); *Gurry v. Cumberland Farms, Inc.,* 406 Mass. 615, 624, 550 N.E.2d 127 (1990). Nonetheless, the parent-subsidiary relationship between WSI and Analytic does not, on its own, shield Analytic from liability for the acts of WSI. A parent corporation may be liable for the acts of its subsidiary if the parent dominates the subsidiary in a pervasive manner that necessitates treating the dominated corporation as an agent of the principal. *Baker v. Raymond Intern., Inc.,* 656 F.2d 173, 180 (5th Cir.1981), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982). The fact that Farnham, Bardis, and Tudor were all Analytic employees raises an inference that WSI was, in fact, Analytic's agent. Accordingly, any of Devlin's claims properly asserted against WSI may also be asserted against Analytic.

WSI and Analytic argue that the First Circuit demands a strict application of the *McDonnell Douglas* test. A strict approach, they say, allows an employer to terminate a capable employee at age sixty-five and replace him with a forty year old. Unless there was direct evidence of age discrimination, the employer would be free from liability even if age was determinative in his decision to terminate the employee. For example, *Phipps v. Gary Drilling Co., Inc.,* 722 F.Supp. 615 (E.D.Cal.1989) held that no inference of age discrimination existed by the mere fact that an employee, who was 58

---

5. Under the ADEA, no civil action may be commenced until sixty days after a charge or notice of intent had been filed with the EEOC. Devlin filed his notice in May, 1990.

years old at the time of discharge, was replaced by an employee who was 41 years old, and the fact that the replacement himself was within the protected group, as well as evidence of substantial representation of older workers within the work force, tended to rebut any inference that the employer was motivated by age discrimination. If this Court applies this so-called strict *McDonnell Douglas* approach to the present case, without question Devlin's prima facie case falters. Devlin's immediate successor, Irving, was forty-two at the time he assumed Devlin's responsibilities. Since Devlin's replacement was over forty years of age, Devlin fails to clear the third hurdle of a prima facie case.

To prevent such a seemingly inequitable outcome, however, the First Circuit permits a plaintiff to make a prima facie showing by evidence of the fact that the employee was replaced by someone younger or someone under forty. *Menard v. First Sec. Services Corp.*, 848 F.2d 281, 285 (1st Cir.1988); *Dea v. Look*, 810 F.2d 12, 14 (1st Cir.1987) citing *Loeb v. Textron*, 600 F.2d 1003, 1014 (1979). The ADEA protects employees between the ages of forty and seventy. The wider the gap between the ages of the former employee and the successor, the greater the inference of age discrimination. The closer the ages, the more tenuous the inference. This Court cannot allow WSI and Analytic to content themselves with the notion that filling Devlin's vacancy with an employee within the protected age group necessarily rebuts any inference of age discrimination. The thirty year disparity in the parameters of the ADEA compels close examination of the circumstances surrounding the termination of any protected employee. Furthermore, the Court will not condone a situation where an employer escapes liability for age-based discriminatory practices simply by hiring an employee within the protected group. Here, Irving was eight years Devlin's junior. This Court rules that the eight year age gap, while not conclusive evidence of age discrimination, is adequate to satisfy Devlin's prima facie case.

This Court's decision is directly in accord with *Loeb v. Textron*, 600 F.2d 1003 (1st Cir.1979). *Loeb*, the First Circuit's initial examination of the *McDonnell Douglas* standard in an age discrimination context, held that a "correct statement of the *McDonnell Douglas* prima facie case" would be to show that "he was within the protected age group, that he was performing his job at a level that met his employer's legitimate expectations, that he nevertheless was fired and that [his employer] sought someone to perform the same work after he left." *Id.* at 1014.

Other courts, confronted with cases that on their face fall within legally permissible guidelines yet smack of discriminatory employment standards, prohibit employers from insulating themselves from liability by shrouding themselves in the cloak of a replacement's age. For example, the Third Circuit has held that to make out a prima facie case of age discrimination in employment one need not have been replaced by an employee under 40. Rather, the test is whether plaintiff was replaced by a substantially younger employee with equal or inferior qualifications. *Chipollini v. Spencer Gifts, Inc.*, 613 F.Supp. 1156 (D.N.J.1985), *rev'd on other grounds*, 814 F.2d 893 (3rd Cir.1987). The Third Circuit affords the sixty-five year old competent employee redress if let go due to age and replaced by someone in their forties.

The Sixth Circuit has fashioned a modified *McDonnell Douglas* analysis which encourages a case by case review of employers' motives. *See Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1179–80 (6th Cir.1983); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir.1982); *Murray v. Sears Roebuck*, 722 F.Supp. 1500 (N.D.Oh.1989) (employee replaced by fifty-one year old could still make out a prima facie case of age discrimination by fulfilling the other required elements). This case by case motive analysis enables worthy ADEA claimants to bring actions which a strict *McDonnell Douglas* test would otherwise bar and restrains frivolous claimants who are terminated on legitimate grounds. "When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears." *Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). The facts of the present case and the Supreme

Court's recent decision of *Hazen* constrain this Court to adopt the Sixth Circuit's motive analysis test and question what motive other than age compelled WSI to terminate Devlin.[6]

■ Having satisfied burden of stating a prima facie case of age discrimination, the burden now shifts to WSI and Analytic to state a non-discriminatory reason for Devlin's termination. WSI and Analytic, do not even attempt to articulate grounds for Devlin's termination. Consequently, WSI and Analytic have failed to meet their burden of demonstrating that Devlin's evidence is in-

6. Even were this Court to accept the proposition that a replacement within the protected age group rebuts any inference of age discrimination, it is not convinced that Irving was, in fact, Devlin's intended permanent replacement. Devlin asserts that Irving was only a temporary replacement and that WSI and Analytic did not intend Irving to permanently replace Devlin. Critical to the outcome of this motion, then, would be the issue of whether undisputed evidence—taking all inferences against WSI and Analytic—establishes that the Corporations, acting through their employees, did, in fact, intend Irving to be Devlin's permanent replacement.

Devlin argues Irving was temporary and that Devlin's true successor was the twenty-six year old sales associate who accepted the sales position in October 1990. Devlin points to several facts to support his contention that Irving was not his true replacement. Devlin highlights Irving's status as a transfer employee asserting that the transfer did not amount to "hiring a permanent replacement." Moreover, Devlin contends, that the reorganization of the sales territories prevented Devlin from taking the precise position that Devlin previously held. Other facts that Devlin alleges are indicative of Irving's temporary status are: a) Irving was never formally interviewed or offered the job; b) Irving lived outside of the southeast sales territory and worked at the job for only six months; c) Irving's successor was a great deal younger than either Irving or Devlin and lived in the southeast region; and d) at the time of his resignation, Irving believed that WSI never intended to keep him as the permanent sales person.

On the last point, of course, Irving's perception that WSI never intended to keep him and that fact that Irving lived outside of the sales area are not probative of WSI's intention to permanently replace Devlin. Furthermore, Devlin cannot rest his contention on the mere fact that Irving was already employed by WSI or that WSI regrouped the sales districts. It is true that spreading the former duties of a terminated employee among remaining employees does not constitute replacement. *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992). In the present case, however, WSI did not disperse Devlin's duties among several currently employed sales representatives. Rather, WSI transferred Irving from his position as a sales agent at ESD to the position of southeast sales representative at WSI. While initially Irving may have performed both his ESD duties and some of Devlin's former duties, as of March, 1990 Irving discharged only those obligations associated with the job of southeast sales representative. Although WSI shifted some of its sales districts, the position Irving assumed was identical to Devlin's sales area with the exception of two sales districts. Consequently, Devlin cannot impugn WSI's intention simply by advancing evidence that Irving was a transfer employee. If, on the other hand, WSI had dispersed the southeast region among several other employees, and then hired a young sales agent and regrouped the southeast territory for the agent, Irving's temporary replacement argument would be stronger.

Bardis states that when he hired Irving it was Bardis' intention that Irving be Devlin's permanent replacement and that the job was Irving's indefinitely. (Bardis Dep. at 75.) Moreover, Irving's testimony demonstrates that Irving considered himself to be the new permanent southeastern sales person. Indicative of Irving's intent was his desire to move to Atlanta to better serve his customers. (Irving Dep. at 79–82.) Devlin has offered no testimony to the contrary.

Bardis' and Irving's statements notwithstanding, when intent is at the core of a controversy, summary judgment seldom lies. *Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). While portions of Bardis' and Irving's testimony substantially weaken, if not totally undermine, Devlin's feeble posture, the depositions taken in full offer Devlin's position considerable support. Bardis himself offers evidence that leads this Court to question the validity of his statements. Specifically, while Bardis did not hire Irving on a probationary status, Bardis states that he did have "reservations" about hiring Irving. (Bardis Dep. at 50–51.) Bardis questioned whether Irving's position with WSI "would be a long term fit." (Bardis Dep. at 51.)

What emerges from Irving's and Bardis' statements are facts that could imply that WSI and Analytic did not intend Irving to be Devlin's permanent replacement. First and most glaringly, Irving, also within the protected age group, resigned after working under questionable conditions for only six months. (Irving Dep. at 129.) Furthermore, Irving's resignation came at Tudor's suggestion. (Irving Dep. at 129.) WSI and Analytic do not even attempt to articulate non-discriminatory grounds for Devlin's termination. Consequently, in view of Bardis' and Irving's testimony, Devlin has limned a genuine disagreement as to whether Irving was in fact Devlin's permanent replacement. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 49 (1st Cir.1990).

sufficient to raise a genuine issue of age discrimination.

Accordingly, this Court rules that there exists material questions of fact which, if resolved in Devlin's favor, could result in his prevailing at trial. The motion for summary judgment as to Count I of the complaint is thus DENIED.

## II. The Motion to Dismiss— Counts II and III

■ When confronted with a motion to dismiss, this Court must accept as true the facts alleged by the plaintiff in the complaint and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 37 (1st Cir. 1991); *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). In appraising the sufficiency of the complaint, the Court may not dismiss the claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A. Count II: Wrongful Termination.

■ Good faith and fair dealings between parties are pervasive requirements in contract law and parties to contracts or commercial transactions are bound by this standard. *Fortune v. National Cash Register Company,* 373 Mass. 96, 102, 364 N.E.2d 1251 (1977). In *Fortune,* the Supreme Judicial Court of Massachusetts reasoned that an employer's need for control over its work force could not form a valid basis for a decision to terminate an at-will employee in bad faith. The first Massachusetts case to recognize an exception to an employer's traditional right to terminate an employee with or without cause, *Fortune* grants at-will employees protection from greedy employers who strive for financial gain by depriving at-will employees of earned compensation. At-will employees, working without the benefit of a written contract, are particularly vulnerable to the preconceptions and misapprehensions that often guide the illegal, unethical, or bad faith practices of some employers. The holding of *Fortune,* though, requires something more than bad faith. The employ-er must seek to deprive the at-will employee of money "fairly earned and legitimately expected." *Maddaloni v. Western Mass. Bus Lines, Inc.,* 386 Mass. 877, 884, 438 N.E.2d 351 (1982). *See also Siles v. Travenol Laboratories, Inc.,* 13 Mass.App.Ct. 354, 358, 433 N.E.2d 103, *review denied,* 386 Mass. 1103, 440 N.E.2d 1176 (1982) (no claim for bad faith termination unless there is a showing that discharge involved intent to benefit financially at employee's expense). A wrongful discharge also protects at-will employees from termination for reasons that are contrary to public policy. *Mello v. Stop & Shop Cos.,* 402 Mass. 555, 556, 524 N.E.2d 105 (1988). *See Smith–Pfeffer v. Superintendent of the Walter E. Fernald State School,* 404 Mass. 145, 149–50, 533 N.E.2d 1368 (1989) (discharge violates public policy when an at-will employee is terminated for doing that which law requires or for refusing to do that which the law forbids).

■ The individual and corporate defendants allege that Devlin cannot point to any clearly defined or well established legal right on which his wrongful discharge claim may rest. This argument suggests, incorrectly, that violation of public policy is essential to a claim of wrongful discharge. In *Fortune,* bad faith was the root of the wrongful discharge claim. The public policy principle, enunciated in *Mello,* is simply an extension of, not a restriction on, the *Fortune* holding. While many wrongful discharge cases are predicated on the violation of public policy, an employee may still state a cause of action based on bad faith. *See Maddaloni,* 386 Mass. at 881, 438 N.E.2d 351 (salesperson employed at-will and terminated in attempt to avoid paying commissions was entitled to recovery on jury's finding that employer acted in bad faith).

■ The underpinnings of the *Fortune* case are similar to the facts of the instant case. Fortune, a salesman, was terminated in an effort by his employer to prevent him from recovering already earned sales commissions. *Fortune,* 373 Mass. at 105, 364 N.E.2d 1251. The *Fortune* court concluded that a jury could reasonably find bad faith on the part of the employer. The facts as al-

leged in the present case fall completely within the ambit of *Fortune.* Devlin alleges that WSI retroactively changed its earned commission policy and that he only accepted the new plan under an alleged threat of termination. (Amended Complaint ¶ 15). "A discharge that is contrived to despoil an employee of earned commissions or similar compensation due for past services will qualify under *Fortune.*" *Tenedios v. Wm. Filene's Sons Co.,* 20 Mass.App.Ct. 252, 254, 479 N.E.2d 723 (1985). Devlin's complaint properly alleges a cause of action for wrongful discharge insofar as he alleges that his termination was intended to deprive him of benefits earned but not received. (Amended Complaint ¶ 31[a] ). The motion to dismiss this Count as to the corporate defendants is thus denied.

▇▇▇ Devlin, however, presses this Count for wrongful discharge against Farnham, Bardis and Tudor as well. Under Massachusetts law a high corporate officer may be held personally liable for the torts a corporation commits at his direction. *Union Mut. Life Ins. Co. v. Chrysler Corp.,* 793 F.2d 1, 11 (1st Cir.1986), citing *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 907 (1st Cir.1980). Cases finding personal liability on the part of the corporate officers, classically involve direct participation of the officer in the wrongful conduct or wrongful conduct committed at the direction of the corporate officer. Devlin fails to allege any specific facts from which this Court could infer that the individual defendants were central figures in WSI's decision to terminate Devlin.

Accordingly the motion to dismiss Count II is ALLOWED as to Farnham, Bardis and Tudor and DENIED as to WSI and Analytic.

**B. Count III: Intentional Interference with Advantageous Contractual Relations.**

▇▇▇ In Massachusetts, in order to prove an action for intentional interference with advantageous contractual relations the plaintiff must show that (1) he had a contract with a third party, (2) the defendant knowingly induced the third party to break the contract, and (3) the plaintiff was harmed by the defendant's actions. *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 812, 551 N.E.2d 20 (1990), affirming *United Truck Leasing v. Geltman,* 26 Mass.App.Ct. 847, 852, 533 N.E.2d 647 (1989). Thus, by definition, tortious interference with a contract cannot be alleged against a party to the contract. Devlin alleges that Analytic, Farnham, Tudor, and Bardis were aware of Devlin's employment at-will status with WSI and that they acted intentionally to interfere with that contractual relationship so as to cause WSI to terminate the contract. (Amended Complaint ¶¶ 33–36).

▇▇▇ Farnham, Bardis, and Tudor claim that if they did interfere with Devlin's employment contract by virtue of their positions within WSI and Analytic, they were privileged to do so. Justification and privilege are affirmative defenses to a claim of intentional interference with advantageous contractual relations. *Steranko v. Inforex, Inc.,* 5 Mass.App.Ct. 253, 273, 362 N.E.2d 222 (1977). "This rule has particular force as applied to corporate officers, since their freedom of action directed toward corporate purposes should not be curtailed by fear of personal liability." *Id.* The privilege is vitiated, however, if the defendants were driven by actual malice alleged in the complaint. *Mathias v. Beatrice Foods Co.,* 23 Mass.App. Ct. 915, 917, 500 N.E.2d 812 (1986); *Strahm v. WSI Corporation,* Civ. No. 91–12849–S, slip op. at 19 (D.Mass. May 14, 1993) (Skinner, J.). Therefore, a claim for intentional interference with advantageous contractual relations is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. *United Truck Leasing Corp.,* 406 Mass. at 816, 551 N.E.2d 20. Liability may arise from the use of improper means or motive. *Id.* Here, Devlin alleges that at all times Farnham, Bardis, and Tudor were material employees and agents of WSI. (Amended Complaint ¶¶ 10–11). Devlin's allegations do not, however, give rise to an inference of improper motive or means on the part of the individual defendants. The bald assertion that they tortiously interfered with Devlin's employment contract simply does not give rise to an inference that Farn-

ham, Tudor, or Bardis acted in any improper manner. The tortious interference with contract claim, as against Farnham, Bardis, and Tudor, is without merit. *Strahm,* slip op. at 19. The allegations of age discrimination and wrongful discharge, however, properly lodged against Analytic and WSI clearly provide a setting for the tortious interference with contract claim as against Analytic. *Cf. Comey v. Hill,* 387 Mass. 11, 19, 438 N.E.2d 811 (1982) (in an action by a sales representative alleging unlawful interference with an advantageous relationship, evidence of age discrimination was sufficient to permit a jury to find for the plaintiff).

■ As already noted, it is axiomatic that a party to a contract cannot be liable for tortious interference with that contract. This Court ruled at the outset that Analytic is potentially liable as a principal for the actions of WSI as its agent. Therefore, if future discovery reveals that Devlin's allegations concerning the principal-agent relationship between Analytic and WSI are true, Devlin forfeits his claim for tortious interference with advantageous contractual relations as against Analytic. Nonetheless, for the purposes of this motion to dismiss, Devlin has asserted a valid claim.

Consequently, the motion to dismiss Count III is ALLOWED as to Farnham, Tudor and Bardis and DENIED as to Analytic.

### III. The Motion to Amend— Retaliatory Discharge

■ On June 9, 1993, Devlin moved to amend his complaint for the fifth time to add a count for retaliatory discharge against all defendants pursuant to Mass.Gen.L. ch. 152, § 75B. The individual and corporate defendants oppose the motion on the ground of futility, i.e. as the purported amendment fails to state a claim upon which relief can be granted, the amendment will accomplish nothing.

While it is true that there is no common law public policy wrongful discharge claim

based on an allegation that an individual was terminated for asserting rights under the Massachusetts Workers' Compensation Statute, *Ourfalian v. Aro Mfg. Co., Inc.,* 31 Mass. App.Ct. 294, 296, 577 N.E.2d 6 (1991),[7] Devlin's proposed amendment is meritorious. Section 75B of the Workers' Compensation Statute, provides protection for just such aggrieved employees. Mass.Gen.L. ch. 152, § 75B(2) states:

> No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter ... An employer found to have violated this paragraph shall be exclusively liable to pay the employee lost wages, shall grant the employee suitable employment and shall reimburse reasonable attorney fees incurred in the protection of rights granted as shall be determined by the court. The court shall grant whatever equitable relief it deems necessary to protect the rights granted by this section.

Devlin's allegations articulate facts capable of supporting a claim under Mass.Gen.L. ch. 152, § 75B. *Ourfalian,* 31 Mass.App.Ct. at 298 n. 5, 577 N.E.2d 6. *See Magerer v. John Sexton & Co.,* 727 F.Supp. 744, 750, *aff'd,* 912 F.2d 525 (1st Cir.1990) (employee could not claim wrongful discharge for filing workers' compensation claim where statutory law already provided a remedy under Mass.Gen.L. ch. 152, § 75B). Since the relief afforded by Mass.Gen.L. ch. 152, § 75B is exclusive to employers, however, this claim is appropriate only against WSI and Analytic, and no such claim will be permitted to be asserted by way of amendment as against Farnham, Bardis, and Tudor.

### CONCLUSION

For the reasons stated above, the motion for Summary Judgment is DENIED as to Count I, and the Motion to Dismiss Counts

---

7. The Court notes that the defendants inaccurately state that *Ourfalian* "held that any claim for retaliatory discharge based upon a violation of public policy was barred." Defendants Supplemental Memorandum of Law at 14, n. 8. This statement is a blatant distortion of the holding of

*Ourfalian. Ourfalian* unequivocally refused to address the issue of whether allegations of retaliatory discharge implicate a public policy since the plaintiff had redress under the Worker's Compensation Law. *Ourfalian,* 31 Mass.App.Ct. at 297, 577 N.E.2d 6 (1991).

II and III is ALLOWED in part and DE-NIED in part, as is the Motion to Amend. The case is ordered referred to Magistrate Judge Collings for discovery proceedings coordinated with *Strahm v. WSI Corporation*, Civ. No. 91–12849–5 (D.Mass.).