Lenk, J.
Plaintiff initiated this action seeking compensatory damages for wrongful termination. In his two-count complaint plaintiff alleges that defendants, De Gregorio Construction Company and Vincent De Gregorio, Jr., terminated him in violation of public policy and in retaliation for exercising his rights under the prevailing wage laws, G.L.c. 149, et seq. This matter came before the court for jury waived trial on December 14-15, 1994. A stenographer was sworn to take and transcribe the testimony at the two days of trial. All parties were represented by counsel. Seven witnesses testified and eight exhibits were introduced into evidence; these are hereby incorporated into this decision for the purpose of any appeal. Based on all the evidence, I find and rule as follows:
FINDINGS OF FACT
1. Plaintiff, Joseph Daigle was employed by defendant, De Gregorio Construction Company, Inc. (DCC) from the fall of 1988 through August 31, 1991 as an employee at will.
2 Defendant Vincent De Gregorio (De Gregorio Jr.) was a 49% shareholder of DCC, served as the corporation’s Treasurer and oversaw DCC’s daily operations. Vincent De Gregorio, Sr., (“De Gregorio Sr.”) who owned the other 51% of DCC’s stock, died on August 31, 1991. After his death, De Gregorio Sr.’s shares were returned to DCC and his son De Gregorio Jr. became President, Treasurer and Clerk of DCC.
3. DCC had a number of public construction contracts in the 1988-91 period, which included projects in Chelmsford, Bellingham, Franklin, Westborough and Worcester. The work performed by DCC included water and sewer line construction.
4. In October 1988, DCC hired Daigle as an equipment operator. Daigle earned $26.00 per hour at this time, the prevailing wage for such work. A few months later, De Gregorio Jr. offered Daigle a mechanic’s job. Although this job only paid $17.00 an hour, the position was year-round. The equipment operator’s position, on the other hand, was seasonal and subject to winter lay-offs Daigle accepted the mechanic’s job at $17.00 an hour and began repairing and maintaining DCC’s equipment, which position and salary continued until his termination on August 31, 1991.
5. In the winter months, Daigle worked primarily in DCC’s garage. During DCC’s operational months, however, Daigle spent approximately 70% of his time repairing and maintaining equipment on the various job sites, including the public contract job sites. Daigle reported to Dennis Smith, the garage foreman. Smith regarded Daigle as an excellent mechanic.
6. On August 28, 1991, Steve Troiano, at the time an investigator for the Massachusetts Department of Labor and Industries, received an anonymous phone call informing him that DCC was in violation of the prevailing wage laws at the Worcester job site. The next day, Troiano visited that site. Daigle, John Cavanaugh, a city of Worcester inspector, Antoine Oliviera, the site foreman, and the work crew consisting of Carlos Camara, Steve Gerolomo, Dave DesJardins and two or three other men, were present on the job site when Troiano visited it.
7. Troiano arrived on the job site and told the foreman, Oliviera, that he was there to investigate a complaint regarding prevailing wages. Troiano asked Oliviera for the prevailing wage specifications and Oliviera told him that they were at the DCC office. Subsequently, Oliviera telephoned the office and De Gregorio Jr. eventually delivered the specifications.
*572 8. In the meantime, Troiano approached Daigle and initiated a conversation with him. Troiano asked and was told by Daigle his job functions and how much he earned. Troiano told Daigle that $17.00 an hour was not the prevailing wage and asked Daigle to sign a document to this effect. Daigle did so.
9. Subsequently, Troiano approached Carlos Camara. Based on their conversation, Troiano asked Camara to sign a document indicating he was not receiving the prevailing wage. Camara signed the document.
10. Troiano spoke with the other employees on site but they refused to sign the statement.
11. When De Gregorio Jr. arrived at the Worcester site, he and Oliviera approached Troiano and asked if there was a problem. Troiano said there was no problem. Oliviera and De Gregorio Jr. asked Troiano to identify any employees who signed a prevailing wage complaint document. Troiano refused to disclose the identity of any such employees, stating that the information was confidential.
12. Later that day, Oliviera, De Gregorio Jr. and De Gregorio Sr. had discussions regarding who had signed the prevailing wage complaint documents. Oliviera was instructed to find out who signed the papers and to fire them. Thereafter, Oliviera made inquiry of the Worcester work crew. Oliviera learned that Daigle and Camara had signed státements. Oliviera informed De Gregorio Jr. and Smith of their identities and that Camara, but not Daigle, wished to retract his statement. When Daigle and the rest of the Worcester crew returned to the DCC garage in the afternoon of Friday, August 30, Smith let it be known that anyone who signed the prevailing wage statements for Troiano would be fired.
13. On Saturday morning, August 31, Daigle arrived at the DCC garage where he was met by Smith. Upon his arrival, Daigle was fired by Smith. Shortly after, De Gregorio Sr. confirmed to Daigle that he was fired.
14. Daigle was fired for signing the prevailing wage statement and not because of poor job performance or because of the company’s financial condition. The court credits Oliviera’s testimony, supported by Gerolomo and Daigle, in this regard and gives no credence to De Gregorio Jr.’s or Smith’s accounts to the contrary. The court found Oliviera to be a very credible witness who had an almost familial regard for the De Gregorios. He displayed no bias toward or hostility against either party and had nothing to gain or lose by his testimony. In contrast, Smith regards De Gregorio Jr. as his best friend, is godfather to one or more of De Gregorio Jr.’s children and is presently employed by De Gregorio Jr.’s company, Mass Crushers. He also acknowledged having had interpersonal difficulties with Daigle. De Gregorio Jr.’s demeanor while testifying, coupled with his self interest in this litigation, lead the court to disregard his testimony as to the reasons for Daigle’s termination.
15. In addition, the reasons proffered by De Gregorio Jr. and Smith for firing Daigle — poor job performance and the company’s financial difficulties — are belied by other credible evidence. While it appears that DCC was in some financial difficulty prior to Daigle’s termination and that DCC was closely monitoring expenses, DCC’s financial condition did not become dire until the spring of 1992. Further, no one had been “laid off’ other them Daigle in the 1989 through October 1991 period. At the time of Daigle’s termination, at the end of August 1991, all DCC’s public works contracts were continuing and Daigle had, in each of the three weeks preceding his termination, worked at least 10 hours of overtime. Prior to firing Daigle, DCC had made no announcements regarding financial difficulties or the potential for layoffs. Indeed, Smith acknowledged that prior to the day of termination he had not had the intention to terminate Daigle. If anything, DCC’s less than stellar financial condition in August, 1991 likely underscored and heightened company displeasure with any employee complaining of not receiving prevailing (and higher) wages and thereby exposing the company to fines and the inability to bid for a time on public contracts. The company’s financial condition is thus entirely consistent with the company having fired Daigle for making a prevailing wage complaint.
16. Likewise, there was no credible evidence that Daigle was fired because of poor job performance. There was no evidence that Daigle had ever been told his job was in jeopardy due to alleged absenteeism or tardiness nor was he “docked” for these reasons, nor were any specific instances provided regarding such alleged events.
17. If Daigle had not been wrongfully terminated, he. would have continued to work from September 1, 1991 through October 24, 1992 (60 weeks).
18. On October 24, 1992, DCC ceased operations. After Daigle was terminated, DCC continued to utilize other employees or independent contractors to repair and maintain its equipment until it ceased operations. During this time, Daigle would have earned $17.00 an hour as a mechanic. Thus, defendants’ actions deprived Daigle of $680 a week (40 hours x $17.00 an hour) or $40,800 total (60 weeks x $680). Plaintiff failed to establish how much overtime he worked per week and the court will not speculate as to this fact. After Daigle was terminated, he received unemployment benefits of $282.00 per week for 30 weeks ($8,460.00).
RULINGS OF LAW
1. Employment at will “is terminable by either the employee or by the employer without notice for almost any reason or no reason at all.” Jackson v. Action for Boston Community Development Inc., 403 Mass. 8, 9 (1988). At-will employees, however, are entitled “to *573 recover for terminations made in violation of particular public policies.” Mello v. Stop & Shop, Inc., 402 Mass. 555, 556 (1988); see Folmsbee v. TechTool Grinding & Supply Inc., 417 Mass. 388, 394 (1994).
2. “A basis for a common láw rule of liability can easily be found when the Legislature has expressed a policy position concerning the rights of employees and an employer discharges an at-will employee in violation of that established policy, unless no common law rule is needed because the Legislature has also prescribed a statutory remedy.” Mello, supra at 557.
3. General Laws Chapter 149, §148A provides:
No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter.
4. The Supreme Judicial Court has recognized that the Legislature created G.L.c. 149, §148A to provide a statutory protection to employees seeking redress for violations of the wage and hour provisions of G.L.c. 149. Mello, supra at 557 n.2 and corresponding text; see also Flesner v. Technical Communications Corp., 410 Mass. 805, 811-12 (1991) (public policy to encourage cooperation with ongoing governmental investigation).
5. Daigle has proven by a preponderance of the evidence that he was terminated in violation of G.L.c. 149, §148A and is therefore entitled to compensatory damages, i.e. what Daigle would have earned if he had not been wrongfully discharged. See Flesner v. Technical Communications Corp., 410 Mass. 805,813 &n.8 (1991) (economic damages for wrongful discharge are recoverable): Joseph R. Nolan & Laurie J. Sartorio, Tort Law, §536 p. 309 (1989) (employee discharged in violation of public policy is entitled to lost wages).
6. Although damages for emotional distress as well as other tort damages appear to be recoverable in wrongful discharge cases, see Flesner, supra at 813 & n.8; DeRose v. Putnam Management Co., 398 Mass. 205, 212 n.7 (1986), plaintiff has failed to establish that he suffered this type of harm. Plaintiffs evidence focused solely on lost wages rather than any type of intangible harm.
7. Plaintiff also seeks attorneys fees. Attorney fees, however, are generally not recoverable unless authorized by statute. See Foss v. Foss, 372 Mass. 64, 70 (1977). Although the current version of G.L.c. 149, §27, enacted by St. 1993, C. 110, §173, entitles an aggrieved employee to attorneys fees (as well as treble damages), this statute was not in existence at the time Daigle was terminated. Statutes affecting substantive rights, such as the measure of liability, are not to be applied retroactively absent clear direction from the Legislature. Greelish v. Drew, 35 Mass.App.Ct. 541, 545-46 (1993). Clearly, the current version of the prevailing wage law, G.L.c. 149, §27, affects liability as it would subject a defendant to significantly increased damages: indeed, the statute creates a new substantive cause of action allowing both treble damages and attorney fees. See Id. at 344. There is no indication in the statute’s language that its dictates are to be applied retroactively. Accordingly, there is no statutory basis for awarding Daigle attorneys fees. See Mailhiot v. Liberty Bank & Trust Co., 24 Mass.App.Ct. 525, 532 (1987) (counsel fees are not recoverable in suit by at-will employee for wrongful termination or tortious interference with employment relations): see also Flesner, supra at 819 n. 13 (recognizing that without a statutory basis, a party terminated in violation of public policy is not entitled to attorneys fees).
8. The court reserved at trial on defendant’s motion to dismiss all claims against De Gregorio, Jr. individually, on the grounds that because De Gregorio, Jr. acted only as a corporate officer, he is immune from personal liability. The court now denies this motion. A corporate officer is individually liable for torts in which he personally participated. LeClair v. Siberline Manufacturing Co., Inc., 379 Mass. 21, 28-29 (1979), and cases cited; see Devlin v. WSI Corp., 833 F.Supp. 69, 78 (D. Mass. 1993) (“under Massachusetts law a high corporate officer may be held personally liable for the torts a corporation commits at his direction”).
9. In this case, De Gregorio, Jr. was instrumental in terminating Daigle. The evidence indicates De Gregorio, Jr. participated in a “witch hunt” to find those employees who had signed the prevailing wage statement. De Gregorio, Jr. questioned Troiano about who signed the prevailing wage statements but failed to elicit any information. Subsequently, Oliviera was instructed to find out who signed the statements and to fire them. Oliviera told De Gregorio, Jr. that Daigle and Camara had signed the statements. On Saturday August 31, Daigle was fired by De Gregorio, Jr.’s, close friend and employee. Based on these facts, this court finds that De Gregorio, Jr. directed Smith to fire Daigle because he sought to exercise his rights under the prevailing wage laws. Therefore, De Gregorio, Jr. is personally liable because he directly participated in the tortious activity.
10. Accordingly, both DCC and De Gregorio, Jr. are liable for wrongfully discharging Daigle.
ORDER
This court orders that judgment enter for plaintiff, Joseph C. Daigle, in the amount of $32,340 against defendants, De Gregorio Construction Company, Inc. and Vincent J. De Gregorio, Jr., plus interest and costs.