Carolyn **AFANDE**, Plaintiff,

v.

The **NATIONAL LUTHERAN HOME FOR THE AGED**, and Frank **McGovern**, Defendants.

**Civ. No. AW 93–3671.**

United States District Court,
D. Maryland,
Southern Division.

Oct. 31, 1994.

Thomas H. Talbott of Sullivan and Talbott, Rockville, MD, for plaintiff.

Alice Paige Estill, Baltimore, MD, for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAMS, District Judge.

Plaintiff Carolyn Afande ("Afande") initiated this civil action against her former employer, The National Lutheran Home for the Aged (hereinafter "Home") and her former supervisor, Frank McGovern ("McGovern"), alleging pregnancy discrimination under Title VII. Afande contends: (1) that the Home discharged her because she was pregnant, and (2) that the Home supervised her more closely and made her working condition more burdensome because she was pregnant.[1] Afande claims discrimination under the disparate treatment and mixed motive tests. Presently before this Court is the Home's jurisdictional challenges with respect to Afande's claim of discrimination in working conditions and her claims against McGovern. Also presently pending before this Court is the Home's motion for summary judgment on each of Afande's remaining claims. This Court has reviewed the parties' respective memoranda and exhibits attached thereto. No hearing is deemed necessary. Local Rule 105(6) (D.Md.1992). For the reasons set forth below, the Court will grant summary judgment.

### FACTS

The Home hired Afande on July 25, 1990, as an Environmental Service Aide (hereinafter "ESA"). Afande's primary responsibility

---

1. Afande's complaint consists of nine counts, but after thorough discovery by the parties, Afande agreed to summary judgment on all but four counts which essentially consist of allegations of pregnancy discrimination in termination and working conditions. Afande also initially alleged that she was discriminated against because of her race. However, in her opposition, Afande limits her claims to those related to pregnancy discrimination. Therefore, the Court will likewise limit its analysis of her case.

was to clean the lobby and administrative offices of the Home. Afande recognized that the lobby area, as the first area visitors see, is considered a primary area in the Home and, as such, must be kept meticulously clean.

The Home emphasizes attendance and punctuality with its employees. When an employee is late, or absent without leave, the Home generally issues the employee a written warning. After two warnings, the Home generally suspends the employee. Another warning issued after suspension may result in the employee's termination.[2]

Afande experienced difficulties with both attendance and punctuality throughout her employment. Accordingly, on her first evaluation Afande received an overall rating of "Improvement Needed." [3] Afande received her first evaluation, which covered the period from July 25, 1990 to May 1991, on June 24, 1991. She promised her supervisor, Frank McGovern, that she would improve and six months later, on October 19, 1991, Afande received an overall rating of "Competent." Afande received such a rating even though McGovern issued her a warning on September 16, 1991, for being absent without leave.

From September 16, 1991, to May 19, 1992, when the Home fired Afande, she received the following warnings and suspensions.

| DATE | ACTION | VIOLATION |
|------|--------|-----------|
| 09/16/91 | Warning | Absent without Leave |
| 11/21/91 | Warning | Absent without Leave |
| 03/13/92 | Warning | Absent without Leave |
| 03/13/92 | Suspension | |
| 05/19/92 | Warning | Absent without Leave |
| 05/19/92 | Terminations | |

As indicated, Afande was absent without leave four times in less than a year, with one warning occurring approximately one month after Afande's special evaluation.

Some time in February or March, 1992, Afande informed McGovern that she was pregnant.[4] About this same time, the Home's Pastor and his wife complained to McGovern about Afande's work performance and the lobby's cleanliness. Shortly thereafter McGovern began paging Afande more than normal and inquiring whether she had completed certain tasks.[5] During this period, McGovern also asked Afande to remove paint stains from baseboards located in the lobby area.[6] Because Afande had to bend over to clean the baseboards, she experienced some discomfort. However, Afande never informed McGovern of her discomfort.

On May 19, 1992, Afande reported to and worked a full day at the Home. At the end of the day McGovern informed Afande that her services at the Home were no longer desired. On June 19, 1992, Afande met with Ann Mary Noble, Personnel Director, for her exit interview. Noble did not review McGovern's decision to fire Afande. Afande completed the Home's Exit Questionnaire form, indicating (1) that she enjoyed working at the Home, (2) that her working conditions were good, (3) that the amount of work she was asked to perform was fair, (4) that she received effective and fair supervision, and (5) that she would recommend the Home to her friends who were looking for employment.

2. The Home's policy is discretionary. The objective of the policy is to change the employee's behavior. In determining whether to suspend or terminate an employee, the Home considers such factors as the employee's general performance and indications that the employee wants to stay employed. The Home also considers the length of time between previous warnings and suspensions and a subsequent violation. Thus, if a year has lapsed between a suspension and another violation, the Home may choose to issue another warning as opposed to suspension or termination.

3. Because of Afande's rating she received a 3% raise instead of the standard 6%. Although the Home generally conducts employee evaluations once a year, the Home gave Afande a special evaluation six months later, at which time she received the remaining 3% raise.

4. McGovern did not comment one way or the other on Afande's pregnancy and nothing else was ever said about it.

5. According to Afande, McGovern paged her once every other day or every other two days, questioning whether she had completed certain tasks. Prior to this time, McGovern had paged Afande but not with the same frequency. McGovern also paged other employees, but apparently not with the same frequency as he did Afande.

6. Afande spent two afternoons, along with her other duties, completing this task.

On March 11, 1993, Afande filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination on the basis of her condition (pregnant) and race (black) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Afande alleged that she was terminated because she was pregnant and black. She attached an affidavit to her Charge alleging that she was also discriminated against in her working conditions because she was pregnant. The EEOC issued Afande a Right to Sue Letter and Afande subsequently filed a complaint with this Court on November 3, 1993.

### DISCUSSION

#### I. *Jurisdictional Challenge*

##### A. *EEOC Charge*

1. Scope of Subsequent Civil Action

■ Afande's complaint alleges that she was not only discriminated against by the decision to terminate her but in her working conditions as well. The Home argues that because Afande did not allege discrimination in working conditions in her EEOC charge, she should be precluded from raising the issue here. This Court disagrees. The Fourth Circuit has long held that a plaintiff's EEOC charge defines the scope of the plaintiff's subsequent right to institute a civil suit. *King v. Seaboard Coast Line Railroad Co.,* 538 F.2d 581, 583 (4th Cir.1976). The EEOC charge will be "enlarged only by such EEOC investigation as reasonably proceeds therefrom." *Id.* A plaintiff "may not litigate allegations of discrimination which are neither stated in the original charge nor investigated by the EEOC, nor file an across-the-board attack premised on a reasonable, but limited, investigation of a well-defined discrimination charge." *Pritchett v. General Motors Corporation,* 650 F.Supp. 758, 761–762 (D.Md.1986) (citing *Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184 (D.Md.1977)).

■ Afande's affidavit is dated the same date as the EEOC charge. From all indications, EEOC received the affidavit as a part of its record and used the affidavit to determine the scope of its investigation. While this Court will not allow Afande to expand her suit beyond the scope of her EEOC charge and its investigation, it will not so narrowly construe Afande's EEOC charge so that her subsequent civil action is limited to the precise wording in the charge without regard to relevant documentation that the EEOC made a part of its record. *See Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184, 1187 (D.Md.1977).

2. Naming Requirement

■ The Home argues that Afande did not name Frank McGovern as a party in her original EEOC charge and therefore, she has failed to exhaust her administrative remedies against him. Generally a Title VII litigant may bring a civil action only against the party named in the original EEOC charge. *Alvardo v. Board of Trustees of Montgomery Community College,* 848 F.2d 457, 458 (4th Cir.1988). The naming requirement serves two purposes. "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Id.* (citations omitted).

This Court is satisfied that Afande properly named McGovern as a party in this action. While Afande did not name McGovern in her EEOC charge, she did identify him as her supervisor in her attached affidavit. Furthermore, McGovern attended EEOC proceedings, other than his own deposition, related to this action. By doing so, McGovern not only indicated that he had notice of the charge but he availed himself of an opportunity to participate in EEOC's resolution and conciliation process. *See Kouri v. Todd,* 743 F.Supp. 448, 452 (E.D.Va.1990). The purposes of the naming requirement have been met.

#### II. *Summary Judgment*

■ "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"

*Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (internal citation omitted). As such, this Court "ha[s] an affirmative obligation ... to prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). This Court has reviewed the parties' respective memoranda and exhibits attached thereto. All facts and reasonable inferences drawn therefrom have been construed in a light most favorable to Afande. *Matsushita Electric Industrial Co., LTD v. Zenith Radio Corporation,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. Pregnancy Discrimination in Termination

Afande claims pregnancy discrimination in termination under two distinct theories: disparate treatment and mixed motive. In order for Afande to defeat the Home's motion for summary judgment under the disparate treatment test, and thereby raise an inference that she was terminated for an impermissible discriminatory reason, she must establish, by a preponderance of the evidence, (1) that she is a member of the protected class; (2) that she was qualified for her job and her job performance met the Home's legitimate expectations at the time she was terminated; (3) that, in spite of her qualifications and performance, she was terminated; and (4) that she was replaced by someone outside of the protected class of comparable qualifications. *See Ross v. Communications Satellite Corporation,* 759 F.2d 355, 364 (4th Cir.1985) (citing *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)); *see also St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Troupe v. The May Department Stores Company,* 20 F.3d 734, 737 (7th Cir.1994). Once Afande establishes a prima facie case, a presumption exists that the Home unlawfully discriminated against Afande. *St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2747 (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The Home may rebut this presumption by advancing a legitimate, non-discriminatory reason for her termination. If the Home succeeds, the presumption drops from the case. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Afande must thus demonstrate that the reason advanced by the Home is pretextual and the real motive for her termination was her pregnancy. *St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2747. Throughout this process, Afande retains the ultimate burden of persuasion. *Id.*

Alternatively, under the mixed motive test, Afande must show that the Home's primary reason for terminating her was because she was pregnant. Afande argues that under this theory, the Home cannot prevail "by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 252, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989). The Civil Rights Act of 1991, 42 U.S.C. § 2000e–5(g)(2)(B), overturned and clarified *Price Waterhouse* in that a defendant must now demonstrate that it would have taken the same action in the absence of the impermissible motive.

The central issue in both tests is whether Afande's job performance met with the Home's legitimate expectations at the time she was terminated. The Home provided Afande with a copy of its Employee Handbook, which outlined its policies and procedures with respect to leave of absence, consolidated leave, attendance and progressive discipline. Accordingly, when Afande began having problems with attendance and punctuality, the Home disciplined and ultimately terminated Afande under the guidelines in its Handbook.

Afande argues that the Home applied their discretionary disciplinary policy in an inconsistent manner. In support of this argument, Afande contends that two other Home employees, Perry Lee and Frank Twyman, received substantially more favorable treatment than she for engaging in similar conduct. Afande argues that the Home gave both Lee and Twyman a second suspension,

rather than a termination, on their fourth violations. However, neither Lee nor Twyman incurred violations at the same rate as Afande, who was absent without leave four times in less than a year. In contrast, Lee and Twyman incurred their fourth violations approximately one year after the third violation.[7] The alleged disparities in treatment between Afande and two male co-workers are insufficient to sustain a prima facie inference of discrimination. *Houck v. Virginia Polytechnic Institute*, 10 F.3d 204 (4th Cir.1993); *Cook v. CSX Transportation Corp.*, 988 F.2d 507, 512 (4th Cir.1993).

■■■ Afande essentially asks this Court to question the Home's policies and conclude that because the Home's objective is to change the employee's behavior, the Home should have suspended her again instead of firing her. In support of this position, Afande argues that her general work performance, other than her attendance, before her pregnancy was average to above average. (Paper No. 7 at p. 8.) While this may be true, the Home fired Afande for being absent without leave. "[Title VII] is not intended as a vehicle for judicial review of business decisions. Nor does [Title VII] allow a court to sit as a super-personnel department." *Pfeifer v. Lever Bros. Co.*, 693 F.Supp. 358, 364 (D.Md.1987), *aff'd without op.*, 850 F.2d 689 (4th Cir.1988). It is the employer's prerogative, not the employee's to establish the relevant criteria and expectations for continued employment. *See Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989) ("The employee doesn't get to write his own job description. An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age."). Thus, "[a]n employer's articulated reason for terminating a member of a protected class need not be a sound business reason, or even a fair one.... The only relevant inquiry is whether the decision was based on [a protected status]."

*See EEOC v. Flasher Company, Inc.*, 986 F.2d 1312, 1320 (10th Cir.1992) (quoting *Furnco Construction Corporation v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978)).

■■■ While a Title VII plaintiff may present direct and indirect evidence to support a claim of discrimination, neither speculative assertions, possibilities of factual disputes, nor a scintilla of evidence in support of her position will suffice; Afande must come forward with specific facts supporting the necessity of trial. *Matsushita Electric Industrial Co., LTD v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986). Because Afande has not shown that her job performance met the Home's legitimate expectations, she has failed to establish a prima facie case.

■■■ Even assuming that Afande had established a prima facie case, the Home has put forth sufficient evidence of a legitimate, non-discriminatory reason for terminating her in her attendance record. *See Monroe-Lord v. Hytche*, 668 F.Supp. 979, 999 (D.Md. 1987), *aff'd*, 854 F.2d 1317 (4th Cir.1988). The Home has also provided this Court with countless incidents of pregnant women who were granted pregnancy leave with more tenure and better work records than Afande. Afande merely counters by arguing that the Home cannot use statistics to support its claim that she was fired for legitimate reasons. This argument, however, is misplaced. *See, Furnco Const. Corp.*, 438 U.S. at 579-580, 98 S.Ct. at 2519-20 (statistical evidence of other pregnant women who used the Home's leave policy bears heavily on the Home's motive, and can be considered by this Court). Moreover, "[Title VII] requires the employer to ignore an employee's pregnancy, but ... not her absence from work, unless the employer overlooks the compara-

---

7. The Home suspended Lee on January 28, 1992 and gave him an oral warning for being absent without leave on March 24, 1993. The Home suspended Twyman on July 30, 1991 and on again on July 28, 1992 for being absent without leave. While Afande argues that the time be-

tween Twyman's first and second suspension was two days short of one year, this Court will not engage in such hypertechnical gymnastics in the hopes of finding merit in an otherwise meritless claim.

ble absences of nonpregnant employees."[8] *Troupe v. May Dept. Stores,* 20 F.3d 734 (7th Cir.1994).

Afande has not met her burden of showing that the Home's reason was pretextual. Accordingly, this Court holds that, even construing all facts and reasonable inferences drawn therefrom in a light most favorable to Afande, she has failed sustain the burden necessary to defeat summary judgment on this issue.

### B. Pregnancy Discrimination in Working Conditions

■ Afande also alleges that the Home treated her differently in her working conditions because she was pregnant. In support of her claim, Afande asserts that after she informed McGovern of her pregnancy, he began to page her more often than other employees, was in her work area almost daily, and, on one occasion, asked her to remove paint marks from baseboards located in the lobby area. Afande contends that McGovern's actions resulted in "egregious" working conditions for her. (Paper No. 1 at ¶ 24.)

■ The Home argues that McGovern paged Afande more often only after receiving complaints from the Home's Pastor and the pastor's wife about Afande's work. Afande, herself, concedes that McGovern informed her of these complaints, that he paged her only once every second or third day, and that the lobby area, as a primary area in the Home, must be kept meticulously clean to meet the Home's expectations. In the end, Afande has produced no evidence to show that other non-pregnant ESAs were treated more favorably than she. Yet, even assuming she had, Title VII does not insure fair and objective treatment from employers. *See Schaulis v. CTB/McGraw Hill, Inc.,* 496 F.Supp. 666, 670 (N.D.Cal.1980).

It is error to assume ... that differential treatment between a [pregnant] employee and a non-[pregnant] employee that is not explained by the employer in terms of a rational, predetermined business policy *must* be based on illegal discrimination because of an employee's protected class characteristics ... Differences in treatment are inevitable, and even irrational or accidental differences of treatment occur in most business organizations of any size.

*Flasher Company, Inc.,* 986 F.2d at 1320–21 (10th Cir.1992) (emphasis in original). Conclusory allegations about disparate treatment and after-the-fact complaints about tasks that, while made more difficult because of her pregnancy, were nevertheless a part of her job description are insufficient to withstand summary judgment.[9] *Celotex Corp.,* 477 U.S. at 325–27, 106 S.Ct. at 2554. The purpose of the [Title VII] is not to "require employers to ... take steps to make it easier for pregnant women to work." *Troupe,* 20 F.3d 734, 738 (7th Cir.1994) (citing *California Federal Savings & Loan Ass'n v. Guerra,* 479 U.S. 272, 286–87, 107 S.Ct. 683, 692, 93 L.Ed.2d 613 (1987); *Barrash v. Bowen,* 846 F.2d 927 (4th Cir.1988) (per curiam). Afande must do more than rely on her own perceptions. To defeat summary judgment, Afande must present specific evidence that creates a genuine issue of material fact, requiring a trial. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511–12. Afande has failed to meet that burden.

### CONCLUSION

Afande has failed to set forth any specific evidence that would allow a rational trier of fact to conclude that the Home or McGovern discriminated against her because she was pregnant. Thus, this Court finds that summary judgment is warranted. It will be so ordered.

---

8. The analysis under the Pregnancy Discrimination Act and under Title VII are essentially the same. The Pregnancy Discrimination Act "was enacted to clarify that Title VII's proscription of gender-based employment included discrimination on the basis of pregnancy." *Fleming v. Ayers & Assoc.,* 948 F.2d 993, 996 (6th Cir.1991).

9. As previously noted, Afande never complained to McGovern about the discomfort she experienced as a result of having to bend over to remove the paint from the baseboards.