Donna H. MAYBERRY

v.

ENDOCRINOLOGY–DIABETES ASSOCIATES, et al.

No. 3:95–0038.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 31, 1996.

Deanna C. Bell, Nashville, TN, for plaintiff.

Douglas Ray Pierce, M. Kim Vance, Susan K. Carpenter, Kimberly Jennings Dean, Nashville, TN, for defendants.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are Defendant's Motion for Summary Judgment (Docket No. 30) and Plaintiff's Response thereto (Docket No. 36). For the reasons more fully stated herein, Defendant's Motion is GRANTED, and this case is dismissed with prejudice.

This employment discrimination action was filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, et seq. ("Title VII") and the Tennessee Human Rights Act, Tenn.Code Ann. §§ 4–21–101, et seq. Plain-

tiff contends that the terms and conditions of her employment with Defendant changed after she notified Defendant that she was pregnant and that she was constructively discharged from her employment as a result of her pregnancy.

Defendant has filed a motion for summary judgment and asserts that because Plaintiff has failed to establish a prima facie case of pregnancy discrimination, Defendant is entitled to judgment as a matter of law. Because the Court agrees with Defendant, Defendant's Motion for Summary Judgment is GRANTED.

## FACTS

The undisputed facts indicate that Plaintiff was employed by Defendant[1] on May 21, 1990, as a front desk receptionist. In February of 1993, Plaintiff's immediate supervisor, Business Manager Genevieve Hood, retired. Defendant hired Teresa McGill to replace Hood as Business Manager, and McGill was Plaintiff's immediate supervisor through the time of Plaintiff's maternity leave. Defendant instructed McGill to make numerous changes in the operations of the business department and instructed nurse practitioner and part-time Office Manager Anne Brown to assist McGill in her supervisory responsibilities during the time of these changes.

Plaintiff perceived distinct changes in Defendant's business operations immediately following Hood's retirement, which was three months before Plaintiff announced her pregnancy. Plaintiff has testified that all employees, including herself, had to fight for their jobs every day after Hood retired.

On May 28, 1993, Plaintiff notified Defendant that she was pregnant. Plaintiff was due to receive an employee performance evaluation in May 1993. McGill and Brown, with input from the three doctors, prepared an evaluation of Plaintiff's performance for the time period mid-February (when McGill became Business Manager) through May 1993. The written performance evaluation was discussed with Plaintiff on June 4, 1993. Plaintiff testified that she agreed with parts of the evaluation and disagreed with parts of the evaluation. Plaintiff stated that she did not think the evaluation was fair. Plaintiff received a follow-up performance evaluation on July 16, 1993.[2] Plaintiff felt the second evaluation was "better" than the previous one and "much improved."

Plaintiff did not receive a pay increase in 1993, but neither did eight non-pregnant employees of Defendant who were eligible for such a raise. Plaintiff admits she was not entitled to a raise every year and asserts that she was denied a pay increase because she had begun to receive insurance benefits.[3]

The focus of Plaintiff's complaints center on Anne Brown, the Office Manager who assisted McGill. On one occasion, in response to what Plaintiff was wearing, Brown left a copy of Defendant's dress code, with a specific provision highlighted, on Plaintiff's desk. It is undisputed that no other action was taken against Plaintiff for what she wore that day. It is also undisputed that other employees of Defendant had received copies of the dress code in similar incidents.[4]

On another occasion, Plaintiff received a probationary letter from Defendant for leaving work early without permission. Plaintiff contends that Defendant had an informal policy whereby employees could leave early or come in late so long as the front desk was covered by someone. Yet, Plaintiff is unable to name a single employee, other than herself, who ever left work early without permission and has stated that, other than this one

---

**1.** Defendant is a small medical group of three doctors and fewer than twenty employees located in the St. Thomas Medical Plaza in Nashville, Tennessee.

**2.** There is a dispute as to whether Defendant or Plaintiff requested this follow-up evaluation, but there is no dispute that it occurred.

**3.** It is undisputed that Plaintiff began receiving insurance benefits from Defendant sometime in

late 1992, well before she announced her pregnancy.

**4.** Plaintiff contends that non-pregnant employees also violated the dress code. She fails to present any evidence, however, that those employees were treated any differently than she. She cannot rebut Defendant's assertions that the other employees were "counseled" about their dress code violations, too.

time, she herself never left work early without management's approval.

Plaintiff asked and was approved for maternity leave from December 3, 1993 through April 1, 1994. As a result of an overpayment in the fall of 1993, Plaintiff's final paycheck was less than usual. Plaintiff was not the only employee whose final paycheck was reduced to make up for overpayments in the fall.

While Plaintiff was on maternity leave, Defendant restructured its business operations and divided the duties of front desk receptionist, the position Plaintiff had held, among several employees. In February 1994, Defendant notified Plaintiff that, when she returned from maternity leave, she would be working as one of two telephone receptionists/appointment schedulers and her hours would be changed to 9:00 a.m. to 5:30 p.m., a change of one-half hour from her previous work hours. Her salary would remain the same.

Plaintiff alleges that, because of her seniority, she should have been given a choice to work earlier hours. Plaintiff claims that Defendant had an informal policy of allowing seniority choices, yet she has failed to cite any authority for that proposition or give any evidence of such a policy. Plaintiff admits she does not know what factors management considered in assigning hours of work to employees in the telephone receptionist position.

After being told of the change in her work hours, Plaintiff notified Defendant that she would not be returning to work. Plaintiff alleges that she had no choice because she "could not possibly work" the hours assigned. Plaintiff admits she did not ask Defendant to change her hours of work and admits that she never complained to any person in a managerial position with Defendant about pregnancy discrimination. Plaintiff also admits that she had no reason to believe any of the doctors or McGill wanted her to quit. The only reason Plaintiff believes Brown wanted her to quit is that she believes Brown made the change in Plaintiff's scheduled hours of work by one-half hour.

## DISCUSSION

### SUMMARY JUDGMENT

■ As provided in Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). Of course, the court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14, 91 L.Ed.2d at 216.

■ The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

The Supreme Court concluded in *Anderson* that a dispute about a material fact is "genuine" within the meaning of Rule 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the non-moving party's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

■ Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1349 (6th Cir.1991). The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at

**1322**

274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

■■■ In other words, the opponent of the motion cannot merely restate his conclusory allegations in affidavit form or presume the existence of material facts. *Robinson v. Union Carbide Corp.,* 805 F.Supp. 514, 523 (E.D.Tenn.1991). Here, Plaintiff may not create questions of fact by contradicting her previous testimony or by citing inadmissible hearsay evidence. Fed.R.Civ.P. 56(e). In addition, Plaintiff's own conclusory opinions, not based upon personal knowledge, but based solely on her own subjective judgments, do not rise to the level of contradictory proof required to rebut Defendant's sworn affidavits under Rule 56 of the Federal Rules of Civil Procedure. *See, e.g., Robinson,* 805 F.Supp. at 523; and *Martin v. Merrell Dow Pharmaceuticals, Inc.,* 851 F.2d 703, 706 (3d Cir.1988). Mere conclusory allegations are not sufficient to withstand a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## TITLE VII

■■■ Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to discriminate against any individual because of that individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a). In 1978, Congress amended Title VII by the Pregnancy Discrimination Act ("PDA"), which further provides that "the terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). Rather than introducing new substantive provisions protecting the rights

of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting discrimination in the workplace based upon sex.

■■■ The PDA goes on to state: "[W]omen affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." *Id.* .The analysis required for a pregnancy discrimination claim is the same analysis used in other Title VII sex discrimination suits. *Afande v. National Lutheran Home for the Aged,* 868 F.Supp. 795, 803 (D.Md.1994), *aff'd,* 69 F.3d 532 (4th Cir.1995). The PDA "was enacted to clarify that Title VII's proscription of gender-based employment included discrimination on the basis of pregnancy." *Fleming v. Ayers & Assoc.,* 948 F.2d 993, 996 (6th Cir.1991).

■■■ Thus, absent direct evidence of discrimination,[5] the elements of Plaintiff's prima facie case are those established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as that case has been modified and refined to facilitate analysis in discrimination cases. In order to prevail under Title VII, Plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Id.,* 411 U.S. at 801, 93 S.Ct. at 1824. Plaintiff must show: (1) that she is a member of a protected class or minority; (2) that she was qualified for the position held; (3) that despite her qualifications, she was subjected to an adverse employment decision; and (4) that non-pregnant employees were treated more favorably than she or that she suffered from differential application of work or disciplinary rules. *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. at 1824; *Armstrong v. Flowers Hospital, Inc.,* 33 F.3d 1308, 1314 (11th Cir.1994). In other words, Plaintiff must establish that her employer treated her less favorably than other employees because of her sex and/or pregnancy. *See Spina v. Management Recruit-*

---

**5.** Plaintiff does not allege that there is direct evidence of discrimination in this case.

*ers of O'Hare,* 764 F.Supp. 519, 534 (N.D.Ill. 1991).

■■■■ A plaintiff alleging discrimination on the basis of pregnancy may proceed under either a "disparate impact" or "disparate treatment" theory. *Scherr v. Woodland Sch. Community Consol. Dist. No. 50,* 867 F.2d 974, 979 (7th Cir.1988). Title VII prohibits disparate treatment[6]—intentional discriminatory treatment of employees based on impermissible criteria—and disparate impact[7]—facially neutral practices that nevertheless have a discriminatory impact and are not justified by business necessity. *Scherr,* 867 F.2d at 979 (citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36, n. 15, 97 S.Ct. 1843, 1854–55, n. 15, 52 L.Ed.2d 396 (1977)). Plaintiff here does not allege disparate impact but only that she was treated differently after she announced her pregnancy.

■■■■ If Plaintiff meets her initial burden of establishing a prima facie case of discrimination, then the burden of production shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). After the employer has articulated a justification, the burden shifts back to the employee to prove that this reason was merely a pretext for the alleged discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. The burden of persuasion ultimately rests with the Plaintiff, however, who must prove that the Defendant intentionally discriminated against her. *Ulloa v. American*

*Express Travel Related Services Co., Inc.,* 822 F.Supp. 1566, 1570 (S.D.Fla.1993).

It is undisputed in this case that Plaintiff, as a pregnant female, was within a protected class under the *McDonnell Douglas* analysis. Plaintiff alleges that she was treated differently after she notified her employer that she was pregnant[8] and that she was constructively discharged by Defendant's changes in her position and hours of employment while she was on maternity leave.

The Court is not convinced that Plaintiff has established a prima facie case on either allegation. The Sixth Circuit Court of Appeals has cautioned that an employee's subjective perception that she has suffered discrimination, in the absence of objective evidence substantiating such perception, does not constitute probative evidence of such discrimination. *Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir.1987), *cited in Murray v. Sears, Roebuck and Co.,* 722 F.Supp. 1500, 1504 (N.D.Ohio 1989).

Plaintiff cites several incidents which she claims amount to discrimination based upon her pregnancy. In each of these incidents, however, Plaintiff fails to show that the actions were motivated by discriminatory intent or based upon her pregnancy. Furthermore, Plaintiff has failed to show that nonpregnant employees were treated differently.

■■■■ For example, Plaintiff contends that she was given a poor performance evaluation based upon her pregnancy. Discrimination statutes, such as Title VII, do not require that employers make fair or accurate assessments of employees' abilities or that they assign employees to appropriate posi-

---

**6.** The Supreme Court explained disparate treatment: "The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36, n. 15, 97 S.Ct. 1843, 1854–55, n. 15, 52 L.Ed.2d 396 (1977).

**7.** The Supreme Court has said that claims of disparate impact "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly

on one group than another and cannot be justified by business necessity." Proof of discriminatory motive, we have held, is not required under a disparate impact theory. *International Bhd.,* 431 U.S. at 333–38, n. 15, 97 S.Ct. at 1854–55, n. 15.

**8.** Plaintiff admits that none of the doctors who ran Defendant's business treated her any differently after she became pregnant. Her contention about being treated differently focuses entirely upon Anne Brown and those actions which Plaintiff believes Brown to have taken because Plaintiff was pregnant.

**1324**

tions, absent discriminatory intent or impact. *Murray*, 722 F.Supp. at 1505–06.

 *Murray* involved a claim under the Age Discrimination in Employment Act ("ADEA"), but "[t]he ADEA and Title VII share common substantive features and also a common purpose: 'the elimination of discrimination in the workplace.'" *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) (quoting *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 754, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)).[9]

Thus, the substantive provisions of the ADEA are frequently analogized to those of Title VII. *See Equal Employment Opportunity Comm'n. v. Chrysler Corp.*, 546 F.Supp. 54, 59 (E.D.Mich.1982), *aff'd*, 733 F.2d 1183 (6th Cir.1984); *Bechtel v. U.S. Office of Personnel Mgmt.*, 549 F.Supp. 111, 113 (N.D.Ga. 1982) (Because Title VII shares with ADEA a common purpose and because the statutory schemes are similar, courts, including the Supreme Court, have considered cases arising under one statute to have value as precedent for cases arising under the other); *Lubniewski v. Lehman*, 891 F.2d 216, 220 (9th Cir.1989) ("Courts have often consulted Title VII for assistance in interpreting analogous provisions of the ADEA."). Indeed, the prohibitions of the ADEA were derived *in hace verba* from Title VII. *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978).

The fact that Plaintiff disagrees with Defendant's assessment of her performance does not render Defendant's actions discriminatory. Plaintiff cannot raise a factual dispute by alleging that Defendant made a poor business decision. *McDonald*, 898 F.2d at 1162. In addition, no adverse action was taken against Plaintiff in connection with the employment evaluation at issue. Indeed, Plaintiff was given a follow-up evaluation one month later, which she concedes was "much better."

 Plaintiff alleges that she was singled out for violation of Defendant's dress code. Again, Plaintiff has failed to show that anything about Defendant's action was based upon her pregnancy. In fact, it is undisputed that other, non-pregnant employees were similarly treated and that no adverse action was taken against Plaintiff because of the dress code incident.

 Plaintiff also contends that her "good working relationship" with Anne Brown changed after Plaintiff announced her pregnancy. For example, Plaintiff stated that "there were several days Ms. Brown did not even speak to Plaintiff." Personality conflicts alone cannot supply a basis for a discrimination claim. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982). Title VII also does not require employers to treat their employees with fairness or kindness. It only requires that they not discriminate against pregnant women. *Ulloa*, 822 F.Supp. at 1571.

> Federal law ... does not guarantee a utopian workplace, or even a pleasant one. If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts.

*Vore v. Indiana Bell Telephone Co., Inc.*, 32 F.3d 1161, 1162 (7th Cir.1994).

 Plaintiff argues that she was denied a pay raise shortly after she announced her pregnancy. It is undisputed, however, that several non-pregnant employees, including Brown, were also denied a pay raise. Plaintiff has failed to show that she was treated differently from employees who were not pregnant or that the decision not to give her a raise was in any way based upon her pregnancy.[10] Title VII was not intended to "diminish traditional management prerogatives." *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1096. Neither were the discrimination stat-

---

9. The Sixth Circuit has held: "While *McKennon* involved an ADEA claim, we are persuaded by its language that it applies equally to a Title VII claim." *Wehr v. Ryan's Family Steak Houses*, 49 F.3d 1150, 1153 (6th Cir.1995).

10. It is undisputed, in fact, that the decision was based upon Plaintiff's receipt of insurance benefits, which she began receiving several months before she became pregnant.

utes intended to provide a vehicle for judicial review of business decisions. *See, e.g., Ackerman,* 670 F.2d at 70.

Plaintiff alleges that she was given a probation letter for leaving early one day and that the probation letter was "overly harsh." Again, the aim of this Court is not to question the soundness of an employer's judgment. *See, e.g., Wilkins v. Eaton Corp.,* 790 F.2d 515, 521 (6th Cir.1986). Plaintiff has failed to offer any evidence that the probation letter was based upon her pregnancy. Plaintiff even admits that she knows of no other employee who ever did what she did in leaving early, so she cannot show that non-pregnant employees were treated more favorably.

Finally, Plaintiff avers that she was discriminated against because a deduction was made to her last paycheck. Again, Plaintiff cannot dispute that other persons, non-pregnant employees, received similar deductions to their paychecks because of overpayments the year before.[11] Plaintiff just happened to be the first. There is no evidence that this decision was based upon Plaintiff's pregnancy.

The Court is not convinced that Plaintiff has established the four elements required by *McDonnell Douglas.* For example, if Plaintiff could not work the hours set by Defendant following her maternity leave, then she arguably was not "qualified" for the position. In order to show that she was qualified, Plaintiff would have to prove that she could perform her job at a level which met her employer's legitimate expectations. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991); *McDonald,* 898 F.2d at 1160. In this case, Defendant's legitimate expectation was that Plaintiff work as one of two telephone receptionists/appointment schedulers from 9:00 a.m. to 5:30 p.m. each day.

In addition, the Court does not believe the actions taken against Plaintiff were "adverse." Finally, Plaintiff has not proven that non-pregnant employees were treated more favorably than she. She has provided no evidence of differential treatment of those not in this protected class.

Even if Plaintiff had established her prima facie case, however, the inquiry does not stop there. Defendant has produced legitimate, non-discriminatory, business justifications for the actions or inactions alleged.[12] There is no indication that the pregnancy of the Plaintiff was the basis for those business decisions.

Title VII does not demand that an employer give preferential treatment to minorities or women, *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096, or to pregnant employees. "The [PDA] does not ... require employers to ... take other steps to make it easier for pregnant women to work." *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 738 (7th Cir.1994); *Afande,* 868 F.Supp. at 803. In fact, PDA requires employers to *ignore* an employee's pregnancy. *Troupe,* 20 F.3d at 738. Whether this is good or bad social policy can be debated, but the debate belongs in Congress, not the federal courts.

Thus, Plaintiff has failed to establish a prima facie case of discrimination based upon her pregnancy. She has failed to show that she was treated differently from non-pregnant employees, and Defendant's Motion for Summary Judgment on this issue should be GRANTED.

Secondly, Plaintiff claims she was constructively discharged from her job because of her pregnancy. Constructive discharge is a judicially-created doctrine to provide recompense where working conditions are so intolerable that a reasonable person would have been compelled to resign. *White v. Dial Corp.,* 882 F.Supp. 701, 705 (N.D.Ill. 1994), *aff'd,* 52 F.3d 329 (7th Cir.1995); *see*

---

11. Because the deduction was merely recovery of an overpayment, it is really not an "adverse" action at all.

12. For example, the deduction from Plaintiff's paycheck was for an overpayment; the dress code violation incident and probation letter were reasonable business practices; the failure to get a pay raise was based upon valid business and economic concerns.

*also Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir.1987).

 "But, intolerability alone does not suffice, absent an additional showing of a connection between the unbearable circumstances and the plaintiff's sex." *White,* 882 F.Supp. at 705. Here, as indicated above, nothing in Plaintiff's proof indicates that she was treated any differently than male employees or non-pregnant female employees. Plaintiff alleges that she was forced to resign because of the hours which Defendant asked her to work. Yet Plaintiff provides no connection between the "unbearable circumstances" of working 9 a.m. to 5:30 p.m. and her pregnancy.[13]

 Even if she had made some connection, however, proof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other "aggravating factors." *Yates,* 819 F.2d at 637. Courts require some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct upon the employee. *Id.* Plaintiff has presented nothing to suggest that Defendant intended to cause Plaintiff to resign.

There is no proof that Defendant asked Plaintiff to resign. There is no proof that Defendant treated Plaintiff any differently from other employees. There is no proof that Defendant could have foreseen that a change, by one-half hour, of Plaintiff's work schedule would cause Plaintiff to resign.

 As in *Noyes v. Channel Products, Inc.,* 935 F.2d 806 (6th Cir.1991), Plaintiff here has the burden of proving, among other things, that Defendant "took an employment action adverse to" her. *Id.* at 809–10. As in *Noyes,* there was no adverse decision by the employer in this case. Plaintiff here, as in *Noyes,* "sensing an unworkable conflict between her commitments to career and family," resigned from Defendant's employ of her own volition. *Id.*

 As noted above, Title VII does not require an employer to give preferential treatment to minorities, women or pregnant employees. The PDA does not require Defendant to take steps to make it easier for Plaintiff to work. *See Troupe,* 20 F.3d at 738 and *Afande,* 868 F.Supp. at 803.

Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress. The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred. They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.

*Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986).

Again, however the inquiry does not stop here. Once again, Defendant has produced legitimate, non-discriminatory, business justifications for the actions or inactions alleged.[14] There is no indication that the pregnancy of the Plaintiff was the basis for those business decisions.

Thus, Plaintiff has failed to establish a claim for constructive discharge, and Defendant's Motion for Summary Judgment on this issue must be GRANTED as well.

## TENNESSEE HUMAN RIGHTS ACT

 Plaintiff also alleges violations of the Tennessee Human Rights Act ("THRA"). The stated purpose of the THRA is to provide for execution within Tennessee of the

---

**13.** Indeed, at the time of Plaintiff's resignation, she was *not* pregnant. Her need for different work hours has to do with being a *parent,* not with being pregnant, and parents are not a protected class under Title VII.

**14.** While Plaintiff was on maternity leave, Defendant restructured its business operations and divided the duties of the front desk receptionist among several employees. Plaintiff was asked to work as one of two telephone receptionist/appointment schedulers whose work hours were staggered.

policies embodied in the federal civil rights laws. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn.1996) (citing Tenn.Code Ann. § 4–21–101(a)(1)). Accordingly, the analysis under the THRA is the same as under Title VII, *Id.*, and, for the reasons stated above, Plaintiff cannot sustain her claim under the THRA, and that claim is DISMISSED with prejudice.

### OTHER STATE LAW CLAIMS

Having dismissed Plaintiff's federal law claims and THRA claim, this Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for pain, suffering and distress, and those claims are DISMISSED without prejudice. 28 U.S.C. § 1367.

### CONCLUSION

To defeat summary judgment, Plaintiff must do more than rely upon her own perceptions. She must present specific evidence that creates a genuine issue of material fact, requiring a trial. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12. Plaintiff has failed to meet that burden.

Accordingly, Defendant's Motion for Summary Judgment (Docket No. 30) is GRANTED, and this case is dismissed with prejudice.

It is so ORDERED.